Ms. Smith, are you ready? Yes, I am. You may proceed. Thank you, Your Honor, and good morning, Your Honors, and may it please the Court. I represent R.P. Acquisition Corporation. Again, my name is Catherine Smith, and this is a case that was filed originally in Iroquois County. The caption is R.P. Acquisition Corporation v. William Joda Crabtree. And it's a replevant action, simply asking that my client wants to get his property. So, the history is, in 2020, the plaintiff, R.P. Acquisition Corporation, purchased assets out of a bankruptcy estate. And that is what we're trying to get access to. In 2020, the name of the company was T. Olive, and it filed bankruptcy, unfortunately. The successor to T. Olive was the Big R Farm and Home retail stores that maybe some of us may recognize the name of. But Big R was sold to T. Olive, and T. Olive operated under the retail name at its storefronts of Stock and Field. So, the sale was in 2018, and in 2020, unfortunately, the company T. Olive DBA Stock and Field filed bankruptcy. And when it filed bankruptcy, it was doing business at 25 retail locations throughout the Midwest. And it owned two warehouses in Watsika, Illinois. The home base of Big R and this company was in Watsika, Illinois. So, that's its founding grounds. But when it was selling via the bankruptcy court, the bankruptcy court found that there were assets that needed to be sold out of the bankruptcy. And put the notice out there to the public that the assets could be sold, would be sold, and it was going out for bid. And any money generated through the sale of those assets would be used, of course, to pay the creditors that owed T. Olive any money. So, several companies bid on the assets, including the Plaintiff RP Acquisition, and Plaintiff was the successful bidder. So, over the next few weeks, T. Olive and RP Acquisition, the bankruptcy trustee, and many of the creditors, took place in hearings and negotiations to try to firm up an asset purchase agreement and terms by which the assets of T. Olive would be bought by the Plaintiff. So, during that process, the creditors had an opportunity to be heard and negotiate with the proceedings, which many of them did. Many of them asked for changes to be made. So, after a series of weeks, the final asset purchase agreement was arrived at and then presented to the bankruptcy court for consideration. Was Mr. Crabtree a creditor? Yes, he was. Did he participate? Yes, he filed actually as part of the record. I'll refer to pages in the appendix A198 through A205. And it's Mr. Crabtree's notice of entry of appearance and request for service. And this was filed in February of 2021 before the asset purchase agreement was negotiated. So, Mr. Crabtree hired attorneys and provided notice to the court that he was to be informed of and receive all notices and papers specified by the bankruptcy court rules. And he was to be given orders, pleadings, motions, applications, complaints. And I don't mean to read from the record, but it goes on and on. Papers, correspondence, whether they be oral or written. And he was to be given those via a specific format. So, yes, Mr. Crabtree was able to participate in those hearings. His claim was for $47,130 because he owned the warehouse in Watsika, which T. Olive used as a warehouse. So, he was owed rent by T. Olive. So, he did step up and was able to participate. And I will, I'll go ahead and jump to along that regard that when the bankruptcy court did approve the asset purchase agreement, it found in the order. It entered an order stating that it found that the terms of the asset purchase agreement were fair and it would, it was fair to the creditors. It would generate a sufficient sum to sell the assets of T. Olive and then, of course, be able to make distributions to the creditors. So, in the bankruptcy. Ms. Smith, Ms. Smith, I have a question. Yes. How long, how many days was this trial? Two days in Watsika. And how long before the trial commenced? How many days, weeks, months before the trial commenced was the trial date set? I think maybe, John, three months or four months. Is there any reason why there was no court reporter brought in so that we could have a really good record as to exactly what happened? I'll take that as my mistake. And I should have asked for a court reporter. And we're left with, you know, the documentary evidence. I'm not going to use the excuse that I stem from a county that's much more populated. And, you know, we have full-time court reporters, but I should have asked for a court reporter to be there at the day of trial. That was my mistake. Let's move to the next part, which is the statement of facts. The statement of facts that everyone has agreed to doesn't even include all the evidence that was adduced at trial. Can you tell me why the statement of facts is not more complete? Well, as I was getting ready again yesterday, I looked at that and thought that I should have asked for that. But I think that maybe some of the items would have been disputed and it would have resulted in just ongoing, you know, issues between the parties. I didn't think that we would be able to agree. I think that, you know, the evidence produced at trial through the witnesses was very favorable and it was, you know, detrimental. But I don't think that the defendant would have agreed to introduce those as part of the statement of facts. Counsel, you understand that without the record, we can't, you have an affirmative responsibility to prove that the trial judge made a mistake. And the only way that you can, I mean, typically the only way you can do that is by producing a record of the proceedings. And we don't have anything except he testified, he testified, he testified. How can we find the trial judge made a mistake when we don't know what happened at trial? I think if you were to rely on that, the documents that are within the record, which is the asset purchase agreement and the bankruptcy court's order and the case law. And of course, Mr. Crabtree's noticed that he had been part of the bankruptcy court proceedings. Then that would be a very good argument that as part of the asset purchase agreement, it disclosed his warehouse as being the location of the assets of this debtor company, T Olive. It specifically states on A170 of the record, which is the asset purchase agreement, which is in the bankruptcy court record. And it's in the trial court record on item 24. It lists 200 Ernest Grove Parkway, Wauseka, Illinois. Landlord is Joda Crabtree. And this was the schedule 1.1 AL to the asset purchase agreement. And it's listed as the acquired locations for the asset purchase agreement. So he had notice he had every opportunity to participate in those hearings. And he very likely did the bankruptcy court order on a when you say he very likely did. Did he or not participate in those proceedings? When you say no, very likely did. What are you basing that on? I participated in those court hearings and I'm not a witness, but I participated in those court hearings and I know who participated. So I was not a witness at trial, though, and I have not submitted an affidavit. Part of my issue is the obligation that you have to provide us with the adequate record that justice spoke about. But you had the opportunity to bring more detail about the witness's testimony if you had done that in your brief. But in your brief, you don't give any record support for what you state. So that's the issue that Justice Albrecht and Justice Dave and I have right now is trying to figure out what was said by whom and what support was there for that testimony. That's where we're coming from with these questions. I understand. So, at the closing of the sale and and again, when the bankruptcy court issued the order, and this is in a 179 of. The record, it states that sufficient notice was given to all of the creditors who had appeared before the court, which Mr. Crabtree was sufficient notice was given in in paragraph G on page a 179 of the record. It states that a 1st supplemental assumption and assignment notice was given to the creditors. A 2nd notice was given to the creditors. A 3rd notice was given to the record in the record to the creditors, and that the court found that the proper certificates of service were filed and due and proper notice was given to the creditors. So, they had an opportunity to be heard with adequate notice. And this is finding I, this is finding from the bankruptcy court, this isn't testimony at trial or something that every, you know, witness testified to so I know that I don't have the benefit of the witnesses testimony at the trial court. So, I'm heavily relying on the documentary evidence that made this cause of action arise, which was the bankruptcy, the asset purchase agreement that was agreed to by all parties, including the creditors and listed. Simply 27 locations, the 25 retail stores, and the 2 warehouses in what Sika, which Mr. Joe to Crabtree is listed specifically in the asset purchase agreement and he demanded in February of 2021 to be part of the hearings with the bankruptcy court. So, I'm relying heavily on that. And then on when the closing took place, and the actual transition of the assets from to my client, the plaintiff occurred in April of 2021. It then took possession of all of the assets of the company, except for the assets within Mr. Crabtree's warehouse, and I, you know, I'll respect the court and, and stick strictly with what we have in the documentary record. But, again, he had noticed he filed a proof of claim, and the bankruptcy court found that when the plaintiff acquired the assets, it acquired them free of any liens claims or encumbrances so when plaintiff paid the significant sum of money that it did for the assets that were listed in the APA. It relied upon the court's order and relied upon that it would be purchasing all of the assets of the company at the locations listed within the agreement that was approved by the bankruptcy court at at trial. And I think this is, I mean, there is no evidence in the record that Mr Crabtree has produced anything showing that he owned any of the assets in the warehouse. We listed tables chairs dollies and ladders. Absolutely nothing as much as a receipt. So, he did argue that when he purchased the warehouse in 2020 from Mr. owner of tea olive, that there was an agreement that an oral agreement between the two of them that he would that Mr Crabtree would be purchasing all of the personal property within the warehouse as well. But there's no, we can't, we can't consider anything that you're telling us that's not in the record. And it's your responsibility to prove that that the, the judge aired. So we can't talk we can't consider the. I think you've got the presumption wrong the presumption is that the trial court made the right decision, and it's your obligation to rebut that presumptions, and we can't, we can't assume anything that is, is not properly in the record before us. Well, and that's actually good because the defendant raised this defense in its brief at, and at trial stating that the property inside the warehouse is owned by the defendant because there's, there's some agreement that he entered into. And that's why he owns it, but there's no agreement anywhere in the record so it would just be our position that if he owns what's in the warehouse, and he claims that he purchased it from the owner of tea olive, then there should be some documentary evidence. We have the documentary evidence showing that we own what's in the warehouse and that's the asset purchase agreement, which he had notice of. It's the bankruptcy court order, which he had notice of and bound the public found the creditors found tea olive found my client. And if you can't rely on a bankruptcy court order that everyone has notice of, I cited a case that if you enter your appearance before a court, you're submitting yourself to its jurisdiction, and you're subject to the rulings of that court. And it was an Espinoza case so you know I'm doing my best to rely on what's in the record and what's the documentary evidence, even by judicial admission through the bankruptcy court. That was the reason my client purchased the assets so we're asking for, you know, any documentary evidence and there, there is none so I'm also using that in my benefit is that if, if there was some evidence to the contrary to what I've submitted, then it doesn't exist. Miss Smith. Yes. You had indicated. I believe that if a person did not object to the courts order that they were foreclosed from objecting at a later point. Is that based on a statute. Actually I believe is on page 13 of my brief where on 13 of the appellants brief page 13. Second paragraph it states that where the defendant filed a proof of claim notice of appearance requests for service. He submitted himself to the bankruptcy courts jurisdiction and then he forfeited his argument regarding the adequacy of the bankruptcy courts order by failing to raise a timely objection. And the case, supporting that is the United States, United student aid funds versus Espinosa 559 us to 60. Okay. Thank you. Actually, you know supports the in a specific bankruptcy case. Okay. Your, your time is up. You will have time for rebuttal. Thank you. Thank you. Miss Nair. Thank you. Your honor. May it please the court and counsel. My name is Johnny K. Nair. I'm counsel for the Jodah or William Jodah crab tree to start just where counsel left off. There is no dispute that T. I'm sorry that R. P. Purchased the assets of T. Olive. There's also no dispute that R. P. Purchased some assets of T. Olive that were located in the warehouse. Of course, they purchased inventory and supplies, things like that. They were actually owned by T. Olive. The question and the element that R. P. Failed to prove to judge Bartucci satisfaction. The question is whether T. Olive ever owned the particular items that are being sought in this case. There were no inventories. There were no lists attached with the APA in the bankruptcy court. All that the bankruptcy court found was that whatever T. Olive owned at that warehouse was being purchased by R. P. No dispute about that. But as judge Bartucci held, and if you look at. It's page six of the transcript of her of her oral argument of her oral decision. Judge Bartucci states the CEO for the plaintiff company R. P. Acquisition testified that as of the purchase and order in the bankruptcy court, he did not know exactly what items he had purchased. Inventories were required to determine what that was. However, no inventories and no list of items purchased of the bankruptcy were provided to this court. There was mention of data or information before the bankruptcy court, but documents or specific testimony from what that was to this court was never made. The question as judges, Justice Albrecht and Justice Davenport, I think have honed in on here is what is in the record and what judge Bartucci made her decision based on. Part of that might be the documents that Miss Smith has pointed out to the court. But judge Bartucci had before her substantial additional testimony documents and so on. And in the absence of a record, it must be presumed that judge Bartucci based her decisions on the law and on the facts that were presented to her. And to quote from the Webster versus Hartman case, one 95 Illinois second four 26 at page four 32, absent a record. It is presumed that the order entered by the trial court is in conformity with the law and had a sufficient factual basis. Close quote. That's quoting the Fouch case. This record that judge Bartucci considered in its entirety, having heard two full days of testimony and argument, must be presumed to be sufficient support for judge Bartucci's fairly detailed oral argument. She knew and she acknowledged, and I believe that Miss Smith agrees and acknowledges that RP, the appellate, I'm sorry, appellant in this case, the plaintiff appellant had the burden to prove that it, RP owned each and every item that was listed in the complaint. And RP did establish its burden as to one item, the compactor. There's no argument about that. However, as to every other item that was listed in the complaint that was still at issue at the time of trial, judge Bartucci correctly concluded that RP had failed to establish ownership of those items. There is no basis. There's no evidence in the record that is sufficient to overturn judge Bartucci's decision in this case. I will, I will add that I was a bit disturbed by some of the citations in RP's I do note that counsel has limited her argument at this point to mostly what was in the record itself. And I do appreciate that, that change just to conclude your honors, unless there are specific questions that I can answer. We feel that judge Bartucci's order was correct in its entirety. There was not sufficient evidence presented by RP to establish that it owned the items listed in the complaint, other than the compactor. And we would ask that judge Bartucci's decision be affirmed. I have no, I have a question for you, Ms. Neier. Did Mr. Crabtree have any obligation at the time of the bankruptcy courts order to indicate that there was something in that building that he owned? Your honor, there were many things in the building that Mr. Crabtree owned. He actually maintained his personal office in that building. My question was, did he have responsibility to indicate what belonged to him? No. It is clear in the APA and in the bankruptcy court order that it reaches only items that were actually owned by T. Olive. There was never any request that we've been made aware of by the bankruptcy court to identify that the landlord specifically identify items at the facility. So, there was no obligation on the part of any of the landlords to identify items at those facilities that were owned by them rather than by the debtor. Okay. Thank you. Are there any other questions for Ms. Neier? I am for me. Yeah. Okay. Thank you. Thank you, your honors. Ms. Smith, any rebuttal? Yes, just a few words to follow up that the asset purchase agreement listed the acquired locations. And there wasn't any terms in the asset purchase agreement that certain items were going to be. Actually, there was an actual schedule to the asset purchase agreement that said there were no. Excluded assets. And that was Mark. None. There were no excluded assets. So each of the locations. 27 locations were listed and every asset in all of those buildings, except for Mr. Crabtree. Were acquired. So it's just that evidence induced at trial that every other. Entity that was of the 27 or however, many number of companies or locations were that every other asset. That was acquired there. There was no dispute as to every other one. Was that actually evidence that judgment, which you've heard? Yes, it was. The president. That's not something that you're allowed to argue or we're allowed to consider. Correct. So my question is this. The asset. Purchase agreement specifically states that the plaintiff. Acquired all assets located in the warehouse that were owned by T. Olive. That's the key that it had to have owned the asset for it to be purchased. Correct. Correct. So if it was saying. You get everything in the warehouse. Do you think it might've been a different result of it? It just said everything owned by T. Olive versus everything located in the warehouse. I agree. There's a difference there. Between the time of. The acquisition on April 1st. Mr. Crabtree allowed. The plaintiff to enter his warehouse and remove. Certain items. And the items were computers and. And. Forklifts. So it was just some inconsistencies as to. What assets were owned by him and what assets were owned by. The plaintiff. So. Just. There wasn't any. Rhyme or reason as to what he thought belonged to him or, or what he was willing to give to. The plaintiff. So again, I would just. Rest on the documents before the court. And allow. Ask that the court overturned the trial courts. Decision. I have no questions. I have no further questions. Thank you for your arguments here this morning. We'll take the matter under advisement and we'll issue a written decision. As quickly as possible.